IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**JAMES DALE SPENCER**                                          **PLAINTIFF**

v.                              Case No. 3:15-CV-03031

**NANCY A. BERRYHILL,**[1]
**Commissioner of Social Security**                             **DEFENDANT**

## OPINION AND ORDER

Currently before the Court is the Report and Recommendation ("R&R") (Doc. 23) of the Honorable Erin L. Wiedemann, United States Magistrate Judge for the Western District of Arkansas, filed in this case on June 21, 2017, regarding Plaintiff James Dale Spencer's request for judicial review of the decision to deny his claim for disability and disability insurance benefits and supplemental security income benefits under the provisions of Titles II and XVI of the Social Security Act.

The Magistrate Judge recommends affirming the Administrative Law Judge's ("ALJ") determination that Spencer is not entitled to benefits. On July 5, 2017, Spencer's attorney filed timely Objections (Doc. 24) to the R&R. Spencer argues that the Magistrate Judge erred in finding that substantial evidence existed to deny the claim for benefits. Specifically, Spencer contends that: (1) his cardiac issues met or equaled the level of severity needed to qualify for benefits, as per the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix I; (2) the Magistrate Judge and the ALJ both failed to consider the testimony of Spencer's wife; (3) no substantial evidence exists to support a finding that

---

[1] Nancy A. Berryhill has been appointed to serve as acting Commissioner of Social Security, and is hereby substituted as Defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Spencer can work, due to the combination of fatigue, heart problems, gout, deep vein thrombosis in his leg, polycythemia vera, anxiety, and depression; and (4) the Residual Functional Capacity ("RFC") determined by the ALJ is incorrect, in part because Spencer would miss too much work, due to his medical issues, to maintain substantial gainful employment.

In light of Spencer's Objections, the Court has undertaken a *de novo* review of the record, and, after doing so, finds that the Objections offer neither law nor fact justifying deviation from the Magistrate Judge's recommendation. Accordingly, the R&R will be **ADOPTED IN ITS ENTIRETY**.

## I. LEGAL STANDARD

In reviewing the decision of the ALJ, the Court must determine whether substantial evidence in the administrative record supports the decision, pursuant to 42 U.S.C. § 405(g). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). Such evidence is "less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that could have supported a contrary outcome, or because the Court could have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, "[i]f after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those

positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001)).

## II. SPENCER'S OBJECTIONS

### A. First Objection: Requisite Level of Severity for Cardiac Issues

The first objection is that the ALJ incorrectly determined that Spencer's cardiac issues failed to meet or equal the level of severity needed to qualify for benefits, as per the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix I, Listings 4.01-4.05. Listing 4.01-4.02 of the applicable regulation states that "[t]he required level of severity for [chronic heart failure] is met when the requirements in both A and B are satisfied." Subpart A requires the medically documented presence of either "[s]ystolic failure . . . with . . . . ejection fraction of 30 percent or less during a period of stability . . . or [d]iastolic failure . . . with . . . an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability . . . ." Subpart B requires the presence of one of the following:

> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
>
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12–month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
>
> 3. Inability to perform on an exercise tolerance test at a workload equivalent

> to 5 METs or less due to:
>
>> a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>>
>> b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>>
>> c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>>
>> d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 4.04.

The Court has reviewed the medical records submitted in this case and agrees with the ALJ and the Magistrate Judge that Spencer's cardiac condition, consisting of right ventricular enlargement, atrial fibrillation, significant left ventricular systolic dysfunction, and an ejection fraction of 35-40 percent, was well-documented prior to 2008. However, sometime in 2008, his doctors recommended that he undergo surgery to install an implantable cardioverter defibrillator ("ICD") in his chest to manage his arrhythmia. The device was implanted on June 9, 2008. Thereafter, his medical reports consistently indicate that Spencer reported he no longer suffered from palpitations, syncope, presyncope, fatigue, chest pain, dyspnea, or edema. After his surgery, he failed to present any persistent symptoms of heart failure that seriously limited his ability to independently initiate, sustain, or complete activities of daily living. Furthermore, the medical records show that Spencer never underwent acute, extended physician intervention, such as hospitalization or emergency room treatment, after the implantation of the ICD.

As of November 23, 2009, his cardiomyopathy was noted as "stable." *See* Doc. 11,

p. 754. He denied to his doctors that he experienced chest pain, dyspnea, bilateral lower extremity edema, dizziness, or fatigue during an appointment on May 21, 2010. *See id.* at 838-57. On January 27, 2012, he admitted that he had some shortness of breath, and his defibrillator was adjusted at that time; but on January 29, 2012, he informed his doctors that he had been exercising three times a week, for thirty minutes at a time. *See id.* at 1099-1103. He again stated to his cardiologist that he was routinely walking on the treadmill without difficulty or pain as of March 6, 2012. *Id.* at 1328. The medical records after that date do not indicate any material change in condition.

In light of the Court's review of the medical records, it appears that the implantation of Spencer's ICD improved his cardiac symptoms to such an extent that he thereafter failed to meet the required level of severity for chronic heart failure, as described in 20 C.F.R. Part 404, Subpart P, Appendix I, Listings 4.01-4.04. Moreover, his symptoms failed to meet Listing 4.05, for "recurrent arrhythmias," as his arrhythmia was brought under control after the ICD was implanted. Therefore, the ALJ did not err in finding that Spencer's cardiac issues failed to meet the Listing needed to qualify for benefits, and the first objection to the R&R is overruled.

### B. Second Objection: Failure to Consider Testimony of Spencer's Wife

The Court agrees with the Magistrate Judge that the ALJ's failure to mention the testimony of Spencer's wife does not result in reversible error. The Court reviewed Mrs. Spencer's testimony. *See* Doc. 11, pp. 122-125. She testified that Spencer suffers from extreme tiredness, takes several naps during the day, sometimes suffers from joint pain that requires him to use crutches to ambulate, and at times wakes up during the night to

use the bathroom and tosses and turns in his sleep. Her testimony was for the most part duplicative of her husband's, and the ALJ found her husband's testimony to be "not entirely credible" with respect to the "intensity, persistence and limiting effects of these symptoms." *Id.* at 25. The Eighth Circuit has found that "[a]ssessing the credibility of the witnesses lies within the province of the Secretary." *Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995). Here, the ALJ found that the medical evidence and the opinions of his doctors regarding his ability to work were more persuasive and deserving of greater weight than Spencer's (and his wife's) testimony that he was completely unable to work. The second objection is overruled.

### C. Third Objection: Lack of Substantial Evidence to Find That Spencer Can Work Despite Combination of Medical Symptoms

Spencer argues that the combination of his symptoms of fatigue, heart problems, gout, deep vein thrombosis in his leg, polycythemia vera, anxiety, and depression indicate that he cannot work, even at a sedentary job. The Court reviewed the ALJ's opinion and finds that all of Spencer's medical limitations, in combination, were thoroughly considered. The objection is therefore overruled.

### D. Fourth Objection: Unsupported Residual Functional Capacity ("RFC")

Spencer's fourth and final objection is that the RFC determined by the ALJ is incorrect because the ALJ failed to consider that Spencer would miss too much work to maintain substantial gainful employment, and the ALJ also failed to assign the appropriate weight to contrary opinions of Spencer's doctors. Having reviewed the entire record, the Court agrees with the Magistrate Judge's assessment that the ALJ properly found that none of Spencer's impairments were severe enough to qualify for benefits. Several of

Spencer's own doctors opined that he was capable of performing sedentary work, and the ALJ gave those doctors' opinions substantial weight. The ALJ clearly and succinctly explained why he discounted the outlying opinion of at least one doctor who did not agree Spencer could work. For all these reasons, the Court is persuaded that the ALJ's assignment of an RFC of "sedentary work" is supported by substantial evidence, and the fourth objection is overruled.

### III. CONCLUSION

In light of the foregoing discussion, all of Spencer's Objections to the R&R are overruled. The R&R (Doc. 23) is therefore **ADOPTED IN ITS ENTIRETY**, and the findings of the ALJ are affirmed. Judgment will enter concurrently with this opinion.

**IT IS SO ORDERED** on this 17th day of July, 2017.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE